CLARENCE L. ROBINSON

*vs.*

ROCKLAND, THOMASTON AND CAMDEN STREET RAILWAY.

Knox. Opinion April 9, 1895.

*Railroads. Passengers. Removal. Breach of Peace. R. S., c. 51, § 73. Stat. 1889, c. 261.*

In this State, the use of indecent or profane language in a street railroad car is a breach of the peace, and the conductor of the car may immediately arrest any person guilty of such breach of the peace and hold him till a warrant can be obtained, or he can be placed in custody of the proper officers of the law. Or the conductor may remove a person guilty of such breach of the peace from the car.

If, in a car filled with passengers, nearly one half of whom are ladies, a man in earnest conversation undertakes to emphasize his statements, as some men are apt to do, by saying : " By God," it is so, or : " By God," it is not so, the law makes it the duty of the conductor to check him ; and if the latter denies his guilt, and upon being assured by the conductor that he was guilty, flies into a passion and calls the conductor a "damned liar," he may right-fully be removed from the car. Not as a punishment for his insult to the conductor as an individual ; but to vindicate the authority of the law, which forbids the use of such language in a street car, or any other public place, where women and children have a right to be.

The fact, that the offender was innocent of the misconduct with which he was at first charged can be no excuse for his subsequent offense. He can not excuse the use of indecent or profane language in a street railway car by proof that he was first falsely charged with the use of similar language.

On motion.

This was an action of trespass for ejecting and removing the plaintiff from the defendant's street car by its servants. The plaintiff recovered a verdict for $1187.27, and the defendant brought the case to the law court on a general motion, besides alleging that the damages were excessive.

The defendant justified the acts of its servants under R. S., c. 51, § 73, which reads as follows :

"Whoever behaves in a disorderly or riotous manner while on any train of railroad cars or street railroad car, or uses indecent or profane language in such car, is guilty of a breach of the peace, and shall be fined not less than five nor more than five hundred dollars, or imprisoned in jail not less than thirty days nor more than one year ; in addition to any other penalty pro-vided by law."

The car from which the plaintiff was ejected was filled with passengers, twenty-eight to thirty, about half of whom were ladies. Among the number was a drunken man who had twice used profane language for which he was each time reproved by the conductor. The defendant's testimony, adduced by eight witnesses, was to the effect that, immediately after the conduc-tor last spoke to the drunken man in relation to his profanity, the plaintiff said, "By God, you didn't see him." The conductor stepped along to the plaintiff and asked him to stop swearing. The plaintiff denied that he had sworn. A conversation occurred between the conductor and the plaintiff in which the plaintiff used the words "damned liar." The conductor asked the

plaintiff if he wasn't swearing then and the plaintiff replied that he was and he would swear as much as he "damn please." The conductor then told the plaintiff he would have to stop swearing or get off the car, and the plaintiff answered, "I won't get off and I'll be God damned if you can put me off." The conductor then stopped the car and with the aid of the motor-man put the plaintiff off.

The plaintiff denied that he used the profane language testified to by the defendant's witnesses.

*J. E. Moore*, for plaintiff.

I. The principles upon which such actions are based were thoroughly discussed and definitely settled in this State in *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202. Reaffirmed in *Hanson* v. *E. & N. R. R. Co.* 62 Maine, 84.

When a *prima facie* case of assault and battery is sought to be justified, it is incumbent upon the one who justifies, to show that no more force was used than the exigence of the case called for.

In *Vinton* v. *Middlesex R. R. Co.* 11 Allen, 304, which holds that a conductor may expel a person who, by reason of intoxication or otherwise, may disturb passengers, the court say (p. 307) : "The safeguard against an unjust or unauthorized use of the power is to be found in the consideration that it can never be properly exercised except in cases when it can be satisfactorily proved that the condition or conduct of a person was such as to render it reasonably certain that he would occasion discomfort or annoyance to other passengers, if he was admitted into a public vehicle or allowed longer to remain within it."

A corporation cannot escape liability because its servants acted in good faith, if they failed to exercise good judgment. Booth on St. Ry's, § 327, last clause. *Haman* v. *Omaha Horse Ry. Co.* 52 N. W. Rep. 830. (Neb.)

In *Putnam* v. *Broadway & 7th Ave. R. R. Co.* 55 N. Y. 108, it was held that the manifest intoxication of a passenger does not in every case warrant his expulsion, and that the conductor has no right to remove him unless he is dangerous or annoying to others.

There is no pretense in this case that the plaintiff was intoxicated, or would disturb or annoy others. His offense was in denying the conductor's charge, and calling him a liar after continuous prodding, and very great provocation by the conductor. If provocation excuses a conductor, it certainly should doubly so the passenger, when provoked by the conductor whose duty is to exercise great care to treat him well.

The contract on the part of the company is to safely carry its passengers and to compensate them for all unlawful and tortious injuries inflicted by its servants. It calls for safe carriage, for safe and respectful treatment from the carrier's servants, and for immunity from assaults by them, or by other persons if it can be prevented by them. No matter what the motive is which incited the servant of the carrier to commit an improper act towards the passenger during the existence of the relation, the master is liable for the act, and its natural and legitimate consequences. Hence it is responsible for the insulting conduct of its servants, which stops short of actual violence, and for wanton or negligent conduct. Booth on Street Railways, § 372, and cases cited in note.

II. The weight of evidence, especially when conflicting is for the jury. In the case at bar, the evidence was submitted to the jury under a clear and impartial charge. They saw the witnesses and how they appeared, and were the proper judges where the truth lay. The law imposes the duty of determining the facts upon the jury and not upon the court. *Elliott* v. *Grant*, 59 Maine, 418; *Tower* v. *Haslam*, 84 Maine, 86-91.

It is a rule that a new trial will not be granted when the evidence is conflicting and the case has been left to the determination of the jury under a clear and impartial charge. In this case the charge of the presiding justice seems to have been satisfactory to both parties. No exceptions are taken. *Smith* v. *Brunswick*, 80 Maine, 189, 192; *Hunter* v. *Heath*, 67 Maine, 507.

Even though the facts are undisputed, if they are of such a nature or pertain to such a matter that different minds might reasonably exercise different judgments upon them, the question

to be decided belongs to the jury. *Shannon* v. *B. & A. R. R. Co.* 78 Maine, 52, 60; *Lesan* v. *M. C. Railroad Co.* 77 Maine, 85, 91.

III. The same rules govern, and the same authorities are applicable, under the motion to set the verdict aside for excessive damages.

"The question of damages is one which the law submits to the jury. No imputation is made upon their integrity of action. Parties litigant must bow to their decision as to that of the ultimate tribunal for the determination of facts." *Powers* v. *Cary*, 64 Maine, 9, 22.

The defendant asks for a new trial on account of excessive damages being allowed, that he may experiment, and hope to get them reduced, putting the plaintiff to great expense and trouble for that purpose. It is a sort of a gamble. If the damages are likely to be increased he does not want the verdict set aside. They must be very extravagant to justify setting the verdict aside. The court in *Portland & Rochester R. R. Co.* v. *Deering*, 78 Maine, p. 61, say: "The damages were assessed by the jury with rather a liberal hand, but not at such an extravagant amount as to justify us in granting another trial that they may be reduced."

The right of the jury to give exemplary damages for injuries wantonly, recklessly or maliciously inflicted is as old as the right of trial by jury itself. *Goddard* v. *Grand Trunk Ry.* 58 Maine, 202, 218; *Pike* v. *Dilling*, 48 Maine, 539; *Hanson* v. *E. & N. A. R. R.* 62 Maine, 84, 90.

The jury may consider not only the mental suffering which accompanies and is a part of the bodily pain, but that other mental condition of the injured person which arises from the insult of the defendant's blows, or for assault alone, when maliciously done, though no actual personal injury be inflicted. So in various other torts to property alone when the tort feasor is actuated by wantonness or malice or a wilful disregard of other's rights therein, injury to the feelings of the plaintiff, resulting from such conduct of the defendant, may

properly be considered by the jury in fixing the amount of the verdict. *Wyman* v. *Leavitt*, 71 Maine, 227, 229, 230; *Prentiss* v. *Shaw*, 56 Maine, 427.

The body of a man is of little moment compared with the life that temporarily abides in it. Mental suffering may not result from bodily harm alone, but most keenly may flow from causes tending to degrade and humiliate the spirit and self-respect of a man. *Webb* v. *Gilman*, 80 Maine, 177, 188; *Johnson* v. *Smith*, 64 Maine, 553, 554.

One jury might fix the damages at one sum, and another jury at a different sum and yet both act honestly. If, in such a case, the verdict is not so clearly excessive as to create a belief that the jury was influenced by improper motives, or fell into some mistake in making the computation, the court has no right to set the verdict aside and put the parties to the trouble and expense of another trial. *Field* v. *Plaisted*, 75 Maine, 476, 477.

I refer also to cases stated on pp. 218, 219, 220 and 221, 57 Maine, *Goddard* v. *Grand Trunk*, for examples where verdicts have not been set aside for being excessive, though the damages allowed were large, for instance, five hundred pounds for knocking a man's hat off,—a thousand pounds for nominal imprisonment.

*W. H. Fogler*, for defendant, cited : R. S., c. 51, § 73 ; Booth St. Rys. § 369 ; Am. & Eng. Encl. 1016 ; *Murphy* v. *W. & A. R. R.* 23 Fed. Rep. 637 ; *Putnam* v. *Broadway, &c. R. R.* 55 N. Y. 108 ; *Vinton* v. *Middlesex R. R. Co.* 11 Allen, 304, affirmed in *Murphy* v. *Union Ry. Co.* 118 Mass. 228 ; *C. B. & Q. R. R.* v. *Griffin*, 68 Ill. 499 ; *C. & N. W. R. R.* v. *Williams*, 56 Ill. 115. Damages : *Webb* v. *Gilman*, 80 Maine, 188 ; *Goddard* v. *Grand Trunk Ry.* 57 Maine, 223 ; *Ames* v. *Hilton*, 70 Maine, 48 ; *Pierce* v. *Getchell*, 76 Maine, 219 ; *Sanders* v. *Getchell*, *Ib.* 158.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, WISWELL, JJ.

WALTON, J.  We think the verdict in this case is clearly wrong.  It is an action to recover damages for being removed from a street railway car, and the plaintiff has obtained a verdict for $1187.27.  We think the removal was justifiable, and that the verdict is clearly erroneous, and must be set aside.

In this State, the use of indecent or profane language in a street railroad car is a breach of the peace.  It is a crime for which a person may be punished by fine or imprisonment.  And the conductor of the car may immediately arrest any person guilty of such a breach of the peace and hold him till a warrant can be obtained, or he can be placed in custody of the proper officers of the law.  R. S., c. 51, § 73, as amended by Act 1889, c. 261.  Or the conductor may remove a person guilty of such a breach of the peace from the car.  The cases which sustain this right of removal are too numerous for citation.  And in the exercise of this right, the conductor acts as a police officer.  He is not to act or refuse to act at the dictation of his own will and pleasure.  When indecent or profane language is being used in his car, it is his duty to check it, and he will be guilty of a breach of duty if he fails to do so.  And if, in a car filled with passengers, nearly one-half of whom are ladies, a man in earnest conversation undertakes to emphasize his statements, as some men are apt to do, by saying : " By God," it is so, or : " By God," it is not so, the law makes it the duty of the conductor to check him ; and if the latter denies his guilt, and upon being assured by the conductor that he was guilty, flies into a passion and calls the conductor a " damned liar," it is the opinion of the court that he may rightfully be removed from the car.  Not as a punishment for his insult to the conductor as an individual ; but to vindicate the authority of the law, which forbids the use of such language in a street car, or any other public place, where women and children have a right to be.  The fact, if it be a fact, that the offender was innocent of the misconduct with which he was at first charged can be no excuse for his subsequent offense.  A thief can not excuse his crime by showing that before committing the theft in question he had been falsely accused of a similar offense.  No more can a man excuse the use of indecent or pro-

fane language in a street railway car by proof that he was first falsely charged with the use of similar language. To be first falsely charged with an offense is not a license to become immediately guilty of a similar offense.

And herein lies the weakness of the plaintiff's case. He admits that he called the conductor of the car, "a damned liar," and he does not claim that he had any excuse for so doing, except that the conductor had first falsely accused him of swearing and admonished him to desist. And he does not claim that the conductor spoke to him in a loud, harsh, or angry tone of voice. He admits that the car was filled with passengers, nearly half of whom were ladies. He says that the conductor approached him, and, in an ordinary tone of voice, requested him to stop swearing; that he denied that he had been swearing; and that, upon the conductor's again affirming that he had been swearing, and that he must desist or he should be obliged to put him out of the car, he called the conductor, "a damned liar." And several witnesses testify that he went further and defied the conductor, and said that he, "would be God damned if he would put him off the car," and that he would swear as much as he "damned pleased," and that he used much other indecent and profane language.

But, if it should be conceded that the plaintiff's account of the transaction is strictly true, and that all of the defendant's witnesses are mistaken, it would still be the opinion of the court that the plaintiff's conduct justified his removal from the car.

We are reminded by the plaintiff's counsel that in *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202, a verdict for very large damages was sustained. Certainly. And our present decision is in harmony with that decision. In that case, a servant of the railroad company used exceedingly foul and profane language to a respectable and unoffending passenger. Here, a passenger used very offensive and indecent language to a respectable and unoffending servant of the railroad company. We protected the passenger in that case, and, for the same reason, we hope to be able to protect the railroad servant in this case. Both decisions are in favor of morality and decency. In that case, the servants

of railroads were taught to treat passengers with civility, and in this case, we hope to teach passengers to treat the servants of railroads with civility.    To call a street railroad conductor, who, in a crowded car, half filled with ladies, is endeavoring to maintain order and suppress profanity, " a damned liar," is a poor foundation on which to rest a suit for punitive damages.

*Motion sustained.*